Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800

United States District Court
Southern District of New York                                 1:20-cv-04936

| William Marsella, Robert Paterson, individually and on behalf of all others similarly situated, | |
|---|---|
| Plaintiffs, | |
| - against - | Class Action Complaint |
| The Hain Celestial Group, Inc., | |
| Defendant | |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      The Hain Celestial Group, Inc. ("defendant") manufactures, distributes, markets, labels and sells organic vanilla soymilk with added nutrients under the Westsoy brand labeled as Organic Plus Vanilla Soymilk ("Product").

2.      The Product is available to consumers from retail and online stores of third-parties and is sold in cartons of 32 OZ and 64 OZ.

3.      The relevant front label representations include "Westsoy," "Organic Plus," "Vanilla," "Soymilk," "American Heart Association Certified, Meets Criteria for Heart-Healthy Food," and "With Vitamins A, E & D & Calcium."

1



4. The representations are misleading because the front label and ingredient list fail to disclose artificial flavors and the ingredient list conceals the addition of sugar through misleading terms.

5. Today's consumers are especially attentive to the foods and beverages they consume.

6. 62% of consumers surveyed by Nielsen say they try to avoid artificial flavors.[3]

---

[3] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.

7.  Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[4]

8.  Label Insight, a marketing company focused on consumer products, determined that 76% of consumers avoid products with artificial flavors.[5]

I.  "Vanilla" Without Qualification Tells Consumers All of Product's Flavor and Vanilla Taste is from Vanilla Beans

9.  If a product makes a representation as to its primary flavor, the common or usual name is required to designate the source and amount of flavor in a specific way so that consumers will not be misled:

> If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor…
>
> 21 C.F.R. § 101.22(i)(1).

10. These regulations have been adopted in their entirety and without modification by New York State, through the regulations accompanying N.Y. AGM Article 17:

> the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013; U.S. Government Printing Office, Washington, DC 20402), in the area of food packaging and labeling as follows…(3) Part 101 of title 21 of the Code of Federal Regulations, containing the Federal definitions and standards for Food Labeling (including Appendices) at pages 10-172.
>
> 1 NYCRR 259.1(a)(3) contained in Section 259.1 ("Packaging and labeling of food.")

11. Vanilla products are the only flavorings subject to standards of identity.  *See* 21 C.F.R. Part 169 ("Food dressings and flavorings"); 21 C.F.R. §169.3 ("Definitions"); 21 C.F.R. §

---

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[5] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

169.175 – 21 C.F.R. § 169.182 (vanilla products); *see also* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity and/or standards of quality, and tolerances for food and food products as published in title 21 of the Code of Federal Regulations…21 CFR part 169, containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606.") (italics in original).[27]

12. Federal regulations require that a food which is not subject to a standard of identity is required to bear a "common or usual name of a food" which "accurately identif[ies] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." *See* 21 C.F.R. § 102.5(a).

13. The "common or usual name" requirement is incorporated in its entirety and without modification through the regulations accompanying N.Y. AGM Article 17:

> the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013; U.S. Government Printing Office, Washington, DC 20402), in the area of food packaging and labeling as follows…(4) Part 102 of title 21 of the *Code of Federal Regulations*, containing the Federal definitions and standards for Common or Usual Name for Nonstandardized Foods at pages 173-180.
>
> 1 NYCRR § 259.1(a)(4), Section 259.1, Packaging and labeling of food, Part 259, Packaging and labeling of food, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.

14. New York State has adopted and incorporated in its entirety, all provisions of the Federal Food, Drug and Cosmetic Act ("FFDCA") through its Agriculture and Markets Law ("AGM") and the accompanying regulations. *See* Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

15. If the labeling of organic vanilla soymilk is inconsistent with the federal standards,

---

[27] 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.

then it also violates what New York requires.

16.    Consumers expect the Product's flavor to be supplied only from the characterizing food ingredient of vanilla beans because (1) the front label lacks qualifiers such as "flavored," "naturally flavored," "artificial flavors" and "with other natural flavors" and (2) vanilla's standard of identity and its consistent usage gives consumers the impression it contains an exclusively vanilla ingredient. *See* 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor"); *see also* 21 U.S.C. §343(g).

17.    Despite the front label, the Product contains artificial flavors and non-vanilla flavors, which provide its vanilla taste, in contrast to the expectation that all of its vanilla taste was provided by vanilla beans.

18.    This evident from the ingredient list which designates "Vanilla Flavor With Other Natural Flavors" ("Vanilla WONF").

**INGREDIENTS:** ORGANIC SOYMILK (FILTERED WATER, WHOLE ORGANIC SOYBEANS), ORGANIC EVAPORATED CANE JUICE, TRICALCIUM PHOSPHATE, POTASSIUM CITRATE, VANILLA FLAVOR WITH OTHER NATURAL FLAVORS, SEA SALT, CARRAGEENAN, MAGNESIUM CHLORIDE, VITAMIN E (D-ALPHA TOCOPHERYL ACETATE), VITAMIN A PALMITATE, VITAMIN D2, VITAMIN B2 (RIBOFLAVIN), VITAMIN B12.

19.    "Vanilla With Other Natural Flavors" means the Product has some flavor "from the product whose flavor is simulated [vanilla] and other natural flavor [non-vanilla] which simulates, resembles or reinforces the characterizing flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) ("the food shall

5

be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words 'with other natural flavor'") ("WONF").

20. However, the Product's front label fails to even disclose the presence of "Other Natural Flavor."

21. Vanilla's standards of identity mean that where a product's primary characterizing flavor is vanilla, the vanilla regulations take precedence over the general flavor regulations and the "WONF" labeling structure. *Compare* 21 C.F.R. § 101.22 with 21 C.F.R. § 169.175-21 C.F.R. § 169.182 (vanilla products).

22. The vanilla standards permit only glycerin, propylene glycol, sugar, dextrose, corn sirup or vanillin to be added to vanilla and control how such combinations should be named. *See* 21 C.F.R. § 169.175(a)(1)-(5) (ingredients permitted for addition to vanilla extract); *see also* 21 C.F.R. § 169.180(a) (permitting "not more than 1 ounce of added vanillin" for "each unit of vanilla constituent, as defined in 169.3(c)" in the combination labeled "Vanilla-vanillin extract.").

23. The purpose of these requirements is to prevent a trace of vanilla from being spiked with artificial vanilla flavors such as vanillin. Exhibit "A," Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1996 ("The vanilla Standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized product and should therefore be labeled artificial or imitation.")

24. Defendant's "Other Natural Flavor" <u>contains vanillin</u>, an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

6

25. The Product's front label and ingredient list fail to disclose vanillin, an artificial flavor.

26. According to representatives of FEMA:

> The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a)(3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.

Exhibit B, John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

27. Including vanillin as part of the "other natural flavors" in the organic vanilla soymilk Product is misleading because, when read with the unqualified front label of "vanilla," it implies that the Product contains only natural flavors and natural vanilla flavors, even though the added vanillin is not derived from vanilla beans.

28. The FDA addressed the issue of labeling products purporting to be flavored with vanilla.

29. A flavor company representative inquired, "when a food or beverage product is marketed (labeled) as (natural) vanilla, does the characterizing (vanilla) flavor have to be derived from vanilla beans and conform to the vanilla standard of identity?"

30. The FDA responded:

> According to our regulation in Title 21 of the Code of Federal Regulations (CFR), section 101.22(i)(l), if a food contains no artificial flavor that simulates, resembles or reinforces the characterizing flavor, the name of the food on the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla."

Exhibit C, FDA, Letter, Cataline Ferré-Hockensmith, August 5, 2008, p. 2.

31. If a product such as defendant's soymilk does not contain artificial flavors, it would

7

be called "vanilla soymilk" and it should be made from vanilla beans.

32. If defendant's soymilk "does not contain enough of the characterizing ingredient, vanilla beans, to characterize the food or it does not contain such ingredient, and contains vanilla flavor," it could be labeled "natural vanilla flavored soymilk" or "vanilla flavored soymilk."

33. However, the flavors used to make such product must be derived from vanilla beans such as vanilla extract or vanilla flavor that are subject to standards of identity.

34. Products made from vanillin should not be named "vanilla __," e.g., "vanilla ice cream," or "vanilla flavored __ ," e.g., "vanilla flavored ice cream" because these products are not made from vanilla beans or vanilla flavors made from vanilla beans.

35. Defendant's ingredient listing of "Vanilla With Other Natural Flavors" gives consumers the false impression the Product and its flavoring are natural

36. Though a naturally derived vanillin may be designated "'natural flavor'" in the context of the general flavor regulations at 21 C.F.R. § 101.22, this is outside the context of the standardized vanilla ingredients "under sections 169.180, 169.181, and 169.182 in 21 CFR." Exhibit C, FDA, Letter, Cataline Ferré-Hockensmith, August 5, 2008, p. 2.

37. A reasonable consumer cannot follow up or learn the truth that the Product contains non-vanilla artificial vanillin from reading the Product's ingredient list because defendant labels this incorrectly and deceptively as "Other Natural Flavor" as opposed to "Artificial Flavor."

II. Product's Ingredient List Designates "Evaporated Cane Juice," a Misleading Term for Sugar

38. Consumers expect ingredients on a product to be declared by their common or usual name that describes their basic source, function and properties. *See* 21 C.F.R. § 101.4(a)(1).

39. Where an ingredient contains the term "juice," consumers expect that ingredient to be derived from a consumable fruit or vegetable.

40. Defendant's Product lists "Evaporated Cane Juice" shown below, retrieved from the Product website on June 26, 2020.[28]



**INGREDIENTS:** ORGANIC SOYMILK (FILTERED WATER, WHOLE ORGANIC SOYBEANS), ORGANIC EVAPORATED CANE JUICE, TRICALCIUM PHOSPHATE, POTASSIUM CITRATE, VANILLA FLAVOR WITH OTHER NATURAL FLAVORS, SEA SALT, CARRAGEENAN, MAGNESIUM CHLORIDE, VITAMIN E (D-ALPHA TOCOPHERYL ACETATE), VITAMIN A PALMITATE, VITAMIN D2, VITAMIN B2 (RIBOFLAVIN), VITAMIN B12.

41. "Juice" is defined as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree."[29]

42. Fruit and vegetable juices are consumed for their nutritive value as they contain many

---

[28] http://www.westsoymilk.com/products/organic-plus/organic-plus-vanilla/
[29] 21 C.F.R. § 120.1(a).

9

vitamins and minerals.

43. "Evaporated cane juice" on the Product's label, according to the FDA, "suggest[s] that the ingredients are made from or contain fruit or vegetable "juice" as defined in 21 CFR 120.1."[30]

44. However, defendant's "evaporated cane juice" has little in common with the types of juices that Americans consume because it is another name for the ingredient commonly known as "sugar."

45. The FDA concluded that where an ingredient is described as "evaporated cane juice," consumers can be, and are misled because "cane juice" refers to a sweetener.

46. By hiding "sugar" through a term which fails to truthfully and non-deceptively describe the source, function and qualities of the ingredient, reasonable consumers are deceived into purchasing a product with a greater amount of added sugar.

47. Given that the Product is marketed towards consumers looking to stay healthy, consumers will expect that "evaporated cane juice" bears a relationship to an actual fruit or vegetable source they are familiar with, such as soybeans, the main ingredient in the Product.

48. This results in the impression that the Product is a better nutritional choice than other comparable products which truthfully and non-deceptively identify "sugar" on their ingredient lists.

49. The Product's deceptive labeling is especially egregious because defendant sells products intended to appeal to health-minded consumers.

50. A growing number of consumers, including plaintiffs, are paying more attention to the ingredients contained in the foods they eat and are shunning excess, added sugars due to their

---

[30] FDA Guidance, Ingredients Declared as Evaporated Cane Juice (May 2016).

association and contribution to ailments and conditions like coronary heart disease, obesity and diabetes.

51. The misleading ingredient name has a material bearing on price and consumer acceptance of the Product because consumers pay more for products with the positive qualities associated with actual juice, including fiber and naturally occurring vitamins and minerals.

III. Conclusion

52. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

53. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

54. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

55. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

56. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.99 and $4.99 for cartons of 32 OZ and 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

57. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

58. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal

diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

59. Plaintiff William Marsella is a citizen of Florida.

60. Defendant The Hain Celestial Group, Inc. is an Delaware corporation with a principal place of business in New Hyde Park, Nassau County, New York and therefore is a citizen of New York.

61. "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

62. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, *viz*, the purchase of the Product and the misleading representations relied upon by plaintiff Paterson.

63. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

## Parties

64. Plaintiff William Marsella is a citizen of Punta Gorda, Charlotte County, Florida.

65. Plaintiff Robert Paterson is a citizen of New York, New York County, New York.

66. Defendant The Hain Celestial Group, Inc. is a Delaware corporation with a principal place of business in New Hyde Park, New York, Nassau County.

67. During the relevant statutes of limitations, plaintiffs purchased the Product within their district and/or State for personal consumption and/or use in reliance on the representations the Product's flavor contained only vanilla flavoring from vanilla beans and was not enhanced by non-vanilla flavors including artificial flavors.

68. Plaintiff William Marsella bought the Product on multiple occasions, including in April 2020 at Publix, Burnt Store Marketplace, 3941 Tamiami Trl Unit 3145 Punta Gorda, FL 33950.

69. Plaintiff Robert Paterson bought the Product on multiple occasions, including in September 2019 at Whole Foods in the Time Warner Center in Manhattan.

70. Plaintiffs bought the Product because they liked the product type for its intended use and expected it to be flavored only by vanilla beans and not contain artificial flavors and not contain hidden sugar disguised as evaporated cane juice.

71. Plaintiffs would buy the Product again if assured it did not contain artificial vanilla flavor nor added undisclosed sugar.

72. Plaintiffs are unable to rely on the labels of the Products in the future though they want to in order to evaluate the Product for purchase.

## Class Allegations

73. The classes will consist of all purchasers of the Product who reside in New York and Florida during the applicable statutes of limitations.

74. Plaintiffs seek to certify injunctive relief class under Rule 23(b).

75. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

76. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

77. Plaintiffs are adequate representatives because their interests do not conflict with other members.

78. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

79. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

80. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

81. Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL"), §§ 349 & 350,
Florida Statute s. 501.201 et seq. ("FDUPTA") (Consumer Protection Statutes)</u>

82. Plaintiffs incorporate by reference all preceding paragraphs.

83. Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

84. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

85. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

86. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

87. The ingredient list declaration of evaporated cane juice deceives consumers about the presence of added sugar.

88. Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

89. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

90. Plaintiffs incorporate by reference all preceding paragraphs.

91. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

92. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

93. The ingredient list declaration of "natural flavor" fails to tell consumers and plaintiff that a trace amount of vanilla is present and what they taste as vanilla is from artificial flavors.

94. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

95. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

96. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

97. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

98. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

99. Plaintiffs incorporate by reference all preceding paragraphs.

100. The Product were manufactured, labeled and sold by defendant and warranted to

15

plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

101.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

102.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

103.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

104.  Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

105.  Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

106.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

107.  Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

108.  Plaintiffs incorporate by reference all preceding paragraphs.

109.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

16

110. Defendant hid the sugar content knowingly.

111. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

112. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

113. Plaintiffs incorporate by reference all preceding paragraphs.

114. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated: June 26, 2020

                                      Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:20-cv-04936
United States District Court
Southern District of New York

William Marsella, Robert Paterson, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

The Hain Celestial Group, Inc.,

Defendant

Class Action Complaint

Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: June 26, 2020

/s/ Spencer Sheehan
Spencer Sheehan